UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Carlos Torres                          :

     Plaintiff                         : Case No. 3:16-cv-2230

     v.                                : (Judge Richard P. Conaboy)

Nancy A. Berryhill[1]                  :
Acting Commissioner of
Social Security                        :

     Defendant                         :

_____

**Memorandum**

## I.   Background.

     We consider here Plaintiff's appeal from an adverse decision of the Social Security Administration ("SSA") or ("Agency") on his application for Disability Insurance Benefits. ("DIB").  Plaintiff filed his Title II application for DIB on December 7, 2012 alleging onset of disability as of January 1, 2006.  His claim was denied at the administrative level on August 1, 2013.  Plaintiff then requested a hearing before an administrative law judge ("ALJ").  Plaintiff received two such hearings, one on January 28, 2015 and a second hearing on May 5, 2015.  On May 22, 2015, the ALJ issued a

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure which addresses the substitution of parties when a public officer is replaced, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  Fed. R. Civ. P. 25(d).  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. Section 405(g), which states that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commission of Social Security or any vacancy in such office."

decision denying Plaintiff's application.  Plaintiff appealed this decision to the Appeals Council which, on September 22, 2016, affirmed the ALJ's denial of benefits.  The Appeals Council's decision constitutes a "final decision" by the Agency and vests this Court with jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g).  The parties have briefed their respective positions (Docs. 11, 12, and 13) and this case is now ripe for decision.

## II.  Testimony Before the ALJ.

### A.    Hearing of January 28, 2015 (R.65-93).

Present for the hearing before ALJ Reana K. Sweeney were:  the Plaintiff and his attorney, Ronald T. Tomasko, along with Brian Bierley, a vocational expert.  The Plaintiff's testimony may be summarized as follows.  He was born on February 15, 1956 and was 59 years of age on the date of the hearing.  The ALJ noted that Plaintiff's insured status had expired as of December 31, 2008. During the period since January 1, 2016 through the date of the hearing Plaintiff lived alone and he was not married.  Plaintiff could not articulate a reason why he chose January 1, 2006 as the alleged onset date of the disability, but he did testify that he last worked in 2004.  He is 5'11" and weighs 170 pounds.  From January 1, 2006 through his last insured date, December 31, 2008, Plaintiff lived on Workmen's Compensation payments he received pursuant to a work-related injury in 2004.  He ultimately settled

his Workmen's Compensation case in 2013.

Plaintiff has a valid driver's license and completed 11 years of formal schooling. Later on, he earned a high school GED in 1979. He has never served in the military and has never been incarcerated. In the 15 years immediately preceding his alleged disability onset date the Plaintiff worked for several employers. For a time he worked for United Parcel Services unloading trucks. He often lifted 40-50 pound packages in the course of this employment and occasionally moved some that weighed up to 110 pounds. Plaintiff also worked for the Drexel Group at various locations. These jobs were also physically demanding and called for frequent lifting of 40-60 pound parcels. Typically, he would lift packages from a skid and carry them to a table where others would separate the contents.

**B.    Hearing of May 5, 2015 (R.24-64).**

Plaintiff's reconvened hearing included his testimony and that of Andrew Caparelli, a vocational expert. Mr. Caparelli reviewed the discussion of Plaintiff's work history that had begun in the previous hearing. He identified Mascot Petroleum and International Periodical Distributors as other companies who had employed Plaintiff in the past. The ALJ then directed questions to Plaintiff.

Plaintiff reconfirmed the weights he customarily handled at his prior places of employment and stated that he had not worked at

all since 2006.  He stated further that he had not looked for work since 2006.  During the pertinent time frame - - January 1, 2006 through December 31, 2008 - - he had not undergone any back surgery.  Plaintiff did participate in a physical therapy program at a facility in Hershey, Pennsylvania.  He could not be specific regarding how long his course of physical therapy had lasted but stated that it had been weeks or perhaps months.

Discussion then ensued between the ALJ and Plaintiff's counsel in which they discussed medical documentation that Plaintiff's counsel had submitted.  Reference was made to a lumbar spine MRI that demonstrated degenerative disc disease.  Epidural injections that Plaintiff had received were also noted.  Plaintiff stated that he had received "many" such injections and that he continues to receive them.

Plaintiff related that a typical day for him in the period 2006 through 2008 involved arising at 6:00 a.m. to take medications and then basically resting the rest of the day in a supine or sitting position.  He was thus immobile because standing aggravated his back pain.  He was taking pain medications throughout this period and, while they were helpful, they did not completely control his pain.  Plaintiff indicated that a Dr. Zeliger had proposed that he undergo a back surgery but that he declined to have surgery because "that's a dangerous thing".  Plaintiff explained that he has three discs in his neck that are "no good"

4

and that he has pain in his shoulders as well as low back pain with numbness in his arms and legs. He indicated also that he gets headaches because he has too much fluid in his head.

Upon questioning by his attorney, Plaintiff stated that during the applicable period he could stand for no more than five minutes at a time before resting. He indicated that from 2006 through 2008 he was not capable of lifting more than 20 pounds. He was in constant back pain and was getting pain injections every two weeks. These injections blunted his pain but the pain would typically return at a greater intensity within a week of each injection. He opined that he would have been unable to do his past jobs from 2006 through 2008 because those jobs required a great deal of standing as well as lifting, bending, and twisting.

The vocational expert ("VE") then took the stand. He stated that he was familiar with Plaintiff's work history and that he was familiar with the various regulations that affect Social Security decisions as well as the Dictionary of Occupational Titles ("DOT"). The vocational expert indicated that on Plaintiff's "date last insured" (December 31, 2008) he was beyond his 52nd birthday and, thus, was classified as "approaching advanced age". The vocational expert then systematically described Plaintiff's work history and listed all his previous jobs as either "medium" or "heavy" in terms of their exertional levels.

The ALJ asked the vocational expert a hypothetical question in

which the VE was asked to assume an individual of the same age, education, and work experience as the Plaintiff who: could do "medium" work as defined in the DOT while requiring only "normal" breaks; could use hand and arm levers or foot and leg pedals only occasionally; could climb stairs or ramps only occasionally; could stoop, bend, squat, and kneel only occasionally; must avoid exposure to extreme cold or moisture; must avoid working around hazardous machinery or in high exposed places; is limited to simple duties that can be learned on the job in a short period of time; must avoid interaction with the general public; and have only occasional contact with supervisors and co-workers. The VE stated that, given the assumptions of the hypothetical question, the Plaintiff would be unable to do any of his past relevant work.

The ALJ then asked the VE to assume an individual identical to the one in the first hypothetical question except for the fact that he would be limited to "light" work as defined in the Social Security regulations. The VE stated that such a person would be able to perform five (5) occupations that exist in significant numbers in the national economy. These occupations were identified as: conveyor line baker worker; agricultural produce sorter; cleaner/housekeeper; potato chip sorter; and slicing machine tender. The VE stated that his conclusions were based upon the DOT, OSHA regulations, and his personal field experience. When asked by Plaintiff's counsel whether all of these jobs required

6

that the individual stand the majority of the work day, the VE responded that that was the case for each job but for the bakery conveyor line worker.  That position would allow the individual a sit/stand option.

## III. Medical Evidence.

### A.   Dr. Cho (R.607-637).

Dr. Cho was the Plaintiff's treating physician throughout the relevant time frame.  The record indicates that he saw Plaintiff on at least 31 occasions between January 1, 2006 and December 31, 2008.  Dr. Cho's progress notes regarding these visits were informed by several imaging studies that he had requested.  One such study was an MRI of Plaintiff's lumbar spine performed on March 22, 2006 that revealed degenerative changes without spinal stenosis or herniated discs at all lumbar levels.  (Record 611). An additional film requested by Dr. Cho was taken on September 29, 2006 that revealed no evidence of acute osseous abnormality within the lumbar spine and stable, mild degenerative changes as compared to the film study of March 22, 2006.  (R.613).

Dr. Cho's progress notes for the period January 1, 2006 through December 31, 2008 are quite consistent in their assessment of Plaintiff's physical status throughout that period.  Dr. Cho's notes continually indicate that Plaintiff is experiencing lumbar and cervical pain with mild limitation of range of motion in both areas.  On and after December 8, 2006, Dr. Cho's progress notes do

consistently demonstrate that Plaintiff's cervical range of motion is "full" on most occasions. Dr. Cho's notes often describe Plaintiff as de-conditioned and indicate that Dr. Cho has encouraged Plaintiff to perform re-conditioning exercises and exercises designed to increase his range of motion. Dr. Cho also continuously notes that Plaintiff was able to heel/toe walk but consistently documents a positive straight leg raising test on the right with right-sided radiculopathy. Dr. Cho prescribed Oxycontin for Plaintiff's back pain until he developed a tolerance to that drug. Afterward, Dr. Cho switched Plaintiff to Methadone and Mobic. At no time did Dr. Cho recommend that Plaintiff undergo surgery and he confined his management of Plaintiff's symptoms to medication, trigger point injections, and physical therapy.

Dr. Cho never expressed any opinion as to the extent of Plaintiff's functional limitations. On May 28, 2008, Dr. Cho did note that Plaintiff's chronic cervical spondylosis and right shoulder A.C. joint problems were 95-97% improved. However, Dr. Cho never expressed any assessment of the degree to which Plaintiff's lumbar symptoms had improved, if at all, over the course of his treatment. Yet, over many visits, Dr. Cho continued to document Plaintiff's persistent lumbar pain with right-sided radiculopathy and continued to prescribe various pain medications and trigger-point injections to alleviate Plaintiff's symptoms. Dr. Cho also noted on May 28, 2008 that Plaintiff should exercise

8

more and that Plaintiff "should start to look for a job".  R.)[2]

**B.   Dr. Zeliger (R.172 and 705-707).**

Dr. Zeliger, a board certified orthopedic surgeon, began seeing Plaintiff at some point in 2011 after Dr. Cho retired.  In January of 2015, Dr. Cho provided a medical opinion to the effect that, based upon his review of all records compiled by Dr. Cho from 2006 through 2008, Plaintiff "was in fact disabled and unable to work" during that time frame.  (R.172).

Dr. Zeliger has also interpreted an MRI performed on February 13, 2013 as demonstrating: marked disc space narrowing with chronic bulging of the disc and moderate to severe right and moderate left neuroforaminal stenosis at L5-S1; moderate bulging with facet arthropathy and mild canal stenosis with mild to moderate neuroforaminal stenosis, left greater than right at L4-L5; disc space narrowing with diffuse bulging and small left paracentral foraminal annular tear with slightly asymmetric bulging to the left with some facet hypertrophy at L2-3; and central canal stenosis and neuroforaminal stenosis at L3-4 and L1-L2 with moderate disc bulging.  (R.706).  While this MRI was performed years after Plaintiff's last insured date, Dr. Zeliger's impressions from this MRI are largely consistent with MRI's commissioned by Dr. Cho in

---

[2] Dr. Cho continued to treat Plaintiff from the end of Plaintiff's insured status (December 31, 2008) through May of 2011 when he retired.  Inasmuch as these records do not address Plaintiff's physical status during the time he was insured for Social Security purposes, they are of limited relevance to his claim.

2006.

**IV. ALJ Decision.**

The ALJ's decision (Doc. 10-2 at 9-23) was unfavorable to the Plaintiff.  It included the following Findings of Fact and Conclusions of Law:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2006 through his date last insured of December 31, 2008.

3.    Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine with lower extremity radiculopathy, bilateral shoulder bursitis, left shoulder labral tear and right shoulder joint degeneration, and right knee injury.

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional bilateral operation of hand and arm levers/cranks or foot and leg pedals/levers. The claimant also required occasional climbing stairs and ramps but no climbing ladders/ropes/scaffolding and occasional stooping, kneeling, crouching/squatting and reaching overhead with his right upper extremity. The claimant needed to avoid crawling, and concentrated exposure to extreme cold or wet/water/liquids. The claimant needed to avoid large vibrating objects or services, working around or with hazardous machinery and large fast-moving machinery on the ground, and working in high exposed places and around or with sharp objects and toxic or caustic chemicals. The claimant was limited to simple duties that could be learned in a short period of time and requiring a GED of 1,1,1, no direction (sic) interaction with the general public but occasional direct interaction with supervisors and co-workers.

6.  Through the date last insured, the claimant was

unable to perform any past relevant work.

7.  The claimant was born on February 15, 1956 and was 52 years old, which is defined as a younger individual age 18-49 on the date last insured. The claimant subsequently changed age category to closely approaching advanced age.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2006, the alleged onset date, through December 31, 2008, the date last insured.

V.  **Disability Determination Process.**

**V.    Disability Determination Process.**

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[3]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person

---

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R.at 15).

## VI. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel*
> *non* of substantial evidence is *not* merely a
> quantitative exercise. A single piece of
> evidence will not satisfy the substantiality

14

test if the Secretary ignores, or fails to
resolve, a conflict created by countervailing
evidence.  Nor is evidence substantial if it
is overwhelmed by other evidence--
particularly certain types of evidence (e.g.,
that offered by treating physicians)--or if
it really constitutes not evidence but mere
conclusion.  *See Cotter*, 642 F.2d at 706
("Substantial evidence" can only be
considered as supporting evidence in
relationship to all the other evidence in the
record.") (footnote omitted).  The search for
substantial evidence is thus a qualitative
exercise without which our review of social
security disability cases ceases to be merely
deferential and becomes instead a sham.

710 F.2d at 114.

     This guidance makes clear it is necessary for the Secretary to
analyze all evidence.  If she has not done so and has not
sufficiently explained the weight given to all probative exhibits,
"to say that [the] decision is supported by substantial evidence
approaches an abdication of the court's duty to scrutinize the
record as a whole to determine whether the conclusions reached are

15

rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported

16

by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented."  *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

**VII. Discussion.**

**A. General Considerations**

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides

17

an applicant with assistance to prove his claim.  *Id.*  "These
proceedings are extremely important to the claimants, who are in
real need in most instances and who claim not charity but that
which is rightfully due as provided for in Chapter 7, Subchapter
II, of the Social Security Act."  *Hess v. Secretary of Health,
Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974).  As such,
the agency must take extra care in developing an administrative
record and in explicitly weighing all evidence.  *Dobrowolsky*, 606
F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases
demonstrate that, consistent with the legislative purpose, courts
have mandated that leniency be shown in establishing the claimant's
disability, and that the Secretary's responsibility to rebut it be
strictly construed."  *Id.*

> **B.    Plaintiff's Allegations of Error.**

Plaintiff has asserted that the ALJ erred in three respects
that should cause this Court to remand this matter for further
consideration by the Agency.  We shall consider these in turn.

> **1.    Whether the ALJ's Decision was Supported by Substantial
> Evidence?**

The ALJ concluded that the Plaintiff was capable of performing
"light work" with numerous additional limitations identified by the
ALJ.  (R.at 15).  Light work in the context of the Social Security
regulations has a very specific meaning:

The regulations define light work as lifting no more than

20 pounds at a time with frequent lifting or carrying of

objects weighing up to ten pounds.  Even though the

weight lifted in a particular light job may be very

little, a job is in this category when it requires a good

deal of walking or standing - -the primary difference

between sedentary and most light jobs.  A job is also in

this category when it involves sitting most of the time

but with some pushing and pulling of arm/hand or leg/foot

controls which require greater exertion than in sedentary

work....Relatively few unskilled light jobs are performed

in a seated position.

See SSR 83-10.

Our task is to determine whether the ALJ's conclusion

that claimant could perform "light work" with various

limitations is supported by substantial evidence of record as

required by Cotter v. Harris, supra.  Having reviewed the

testimony, the medical evidence of record, and the ALJ's

decision, we conclude that the ALJ's residual functional

capacity ("RFC") lacks the necessary evidentiary support.

The Government argues that the ALJ has the ultimate

authority to determine a claimant's RFC and that an RFC

assessment need not be supported by "matching expert opinion

evidence."  Chandler v. Commissioner of Social Security, 667

F.3d 356, 367 (3d. Cir. 2011)(cited in Defendant's brief, Doc.

12 at 7).  The Government also contends that "even a treating physician's opinion that a claimant is unable to work is not dispositive."  Adorno v. Sullivan, 40 F.3d 43, 47-48 (3d. Cir. 1994)(cited in Defendant's brief, Doc. 12 at 6).  The Government's assertions on these points are accurate yet they do not resolve the Court's concerns.

There is a great tension between the Court's obligation to show appropriate deference to an ALJ's decision and its obligation to ensure that the ALJ's conclusions are ones that could be credited by a reasonable mind as discussed in Richardson v. Perales, supra.  This means that the deference to be accorded an ALJ's RFC determination has its limits and, while the ALJ may be within his rightful authority in crafting an RFC determination without a matching physician's opinion, he still must base his determination upon medical evidence. In choosing to reject a treating physician's opinion an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d. Cir. 2000).  Dr. Zeliger, despite the fact that he did not see Plaintiff during the relevant time period, still qualifies as a treating physician on the basis of his later relationship with the

20

claimant. While his medical opinion that Plaintiff was disabled from 2006 through 2008 is cryptic, it is based upon diagnostic testing ordered by Dr. Cho, Plaintiff's previous treating physician, and voluminous progress notes authored by Dr. Cho in the relevant time frame. Attaching reliability to Dr. Zeliger's opinion in this context may be warranted in a system that routinely permits an ALJ to elevate the opinion of mere consulting physicians, who routinely do nothing more than evaluate the files compiled by treating physicians, over that of treating physicians. In any event, the Court's review of this record discloses no adequate basis for the ALJ, a lay person, to infer that Plaintiff can perform light work.

With respect to the ALJ's reliance (R.at 17) on Dr. Cho's progress note of May 28, 2008 that stated, in part, that the Plaintiff "should start to look for a job", the Court is struck by the fact that in dozens of notes Dr. Cho authored both before and after that date he never made any other allusion to Plaintiff's employability. Moreover, there is complete ambiguity as to what type of job Dr. Cho may have had in mind. Did he envision Plaintiff working in any capacity eight hours per day and forty hours per week? Was he envisioning some type of sporadic employment the performance of which would not defeat a disability claim? We do not know the answer to these questions from this record and neither did

21

the ALJ.  The Court views Dr. Cho's statement of May 28, 2008 as an outlier and an anomaly in this record which does not provide substantial evidence that Plaintiff was capable of full-time employment on that date or any other date in the relevant period.

This record does contain copious documentation by a longtime treating physician, Dr. Cho, that Plaintiff was in near constant pain and suffering from decreased range of motion in his shoulders, cervical spine, and lumbar spine along with pain radiating down his right leg from the alleged onset date (January 1, 2016) through at least the date last insured (December 31, 2008).  Dr. Cho treated Plaintiff for this entire period with powerful pain killing medications and epidural injections and never expressed any opinion as to Plaintiff's functional capacity.  Dr. Zeliger, who became Plaintiff's treating physician after Dr. Cho retired, expressed an unequivocal opinion, based upon diagnostic studies and Dr. Cho's progress notes, that Plaintiff was disabled throughout the relevant period.  However, the Court is not willing to credit Dr. Zeliger's cryptic analysis without further elaboration and will not fault the ALJ for her reluctance to do so.

The Court does find, however, that there is insufficient medical information in this file from which to reasonably

discern the Plaintiff's RFC.[4]  On this point it will be
necessary for the Commission to get a clarifying and more
comprehensive assessment from Dr. Zeliger and/or a report from
a consulting physician on the basis of the diagnostic studies
Dr. Cho relied upon and the progress notes he made.[5]  Then,
and only then, will the Commissioner be in a position to make
a reasoned decision as to the scope of Plaintiff's RFC. A
remand to more fully develop the record is necessary.

> **2.    Whether the Agency's decision must be vacated due to
> the ALJ's failure to give appropriate consideration
> to the side effects of Plaintiff's medications, his
> limited proficiency in the English language, and the
> mischaracterization of his age during the relevant
> period by the ALJ?**

With respect to Plaintiff's argument regarding his
proficiency in the English language, the Court's review of the
transcripts of the two hearings afforded him provide ample
proof that Plaintiff was reasonably proficient in the English
language.  The Court's opinion in this regard is also informed
by Plaintiff's acknowledgments that he completed eleventh

---

[4] The ALJ's obligation to fully and fairly develop the record is implicated by this finding.
See Ventura v. Shalala, 55 F.3d 900, 902 (3d. Cir. 1995).

[5] The Court does acknowledge that the law provides for rare cases where an ALJ may
appropriately craft an RFC determination when no physician has opined as to a claimant's functional
capabilities.  This is not such a case.

grade and subsequently earned his Graduate Equivalency Degree.
(R.at 78-79). The transcripts indicate that, while
Plaintiff's use of the English language may not be
linguistically stylish, he certainly communicates in English
on a functional level that is adequate to perform the type of
jobs the ALJ found to be within his capacities. Plaintiff's
argument on this point is rejected.

Plaintiff's next argument, that the ALJ failed to provide
for the side effects of his medications in crafting his RFC,
is unpersuasive. Our review of Dr. Cho's extensive progress
notes reveals no repetitive theme of any side effects and
Plaintiff's brief does not reference any specific examples of
such limitations in the record. Accordingly, Plaintiff's
assertion that the ALJ erred by failing to allow for
medication side effects is also rejected.

Plaintiff's argument concerning the ALJ's
mischaracterization of his age is accurate. The ALJ's finding
that the Plaintiff was a "younger individual age 18-49" on his
date last insured (R.at 18) is simply incorrect. As Plaintiff
asserts (Doc. 11 at 5-6), he was actually an "individual
approaching advanced age" on his date last insured and,
indeed, for the 23 months preceding that date. The Agency is
reminded that should the amplification of the record result in
a finding that Plaintiff is capable of only "sedentary" work,

Plaintiff's appropriate classification as an "individual approaching advanced age" may impact the Agency's ruling.

**3. Whether the ALJ Unreasonably Discounted the Opinion of Dr. Zeliger Because He Had Not Treated Plaintiff During the Relevant Period?**

The Court has already indicated that the ALJ's decision to accord "little weight" (Record at 18) to Dr. Zeliger's opinion solely on the basis that he did not treat Plaintiff during the relevant time period was erroneous. See pages 20-21 ante. Thus, the Agency will be directed to procure a more comprehensive explanation from Dr. Zeliger and/or an evaluation of the medical evidence by a consulting physician.

**VIII. Conclusion.**

For the reasons stated herein this matter will be remanded to the Commissioner for further proceedings consistent with points raised in this Memorandum. An Order consistent with this determination will be filed contemporaneously.

BY THE COURT

S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Dated: May 5, 2017